IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR No.: 5:19-268-JFA |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| CAROLYN COLTER FRANKLIN | ) | |
| _____ | ) | |

This matter is before the court on the defendant's *pro se* motion for a reduction in her sentence pursuant to the First Step Act of 2018[1] and 18 U.S.C. § 3582(c)(1)(A) (ECF No. 612). The defendant contends that her medical conditions, coupled with the ongoing COVID-19 pandemic, constitute extraordinary and compelling reasons for consideration of her immediate release.

The government has responded in opposition, arguing that the defendant has not shown an extraordinary and compelling reason for release. The defendant did not reply to the government's response.

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties. For the reasons which follow, the defendant's motion is respectfully denied.

STANDARD OF REVIEW

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671

---

[1] Pub. L. 115-015 (S. 756), 132 Stat. 015 (Dec. 21, 2018).

1

(4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(I) provides a statutory vehicle to modify a defendant's sentence. It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals are to reform federal prisons and sentencing laws to reduce recidivism, decrease the federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b) of the First Step Act, provides:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) [of Title 18] to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

2

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court first finds that (i) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. In addition, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found that there is, as of now, no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)." As a result, district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at 230); *see also, Kibble*, 992 F.3d at 331.

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Also, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps.  *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021).  First, the court determines whether "extraordinary and compelling reasons" support a sentence reduction.  Next, the court considers whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission.  As noted previously in this order and as set out in *McCoy*, because there is no applicable policy statement governing compassionate release motions filed by defendants under the recently amended  § 3582(c)(1)(A), district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise. Finally, if the court finds that extraordinary and compelling reasons warrant relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment.

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief.  *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

### *Exhaustion of Administrative Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on their behalf.  The defendant may file a motion with the court after (1) fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a

request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A); *see United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021).

The government concedes that the defendant has exhausted her administrative remedies. Thus, the court will proceed to review the matter on the merits.

## DISCUSSION

### I. *The Defendant's Medical Condition*s

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence reduction or justify compassionate release. However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release. If a defendant has a chronic medical condition that has been identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, it is possible that such medical condition could satisfy the extraordinary and compelling reasons standard. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Rather, the threshold questions are whether the defendant has a particularized risk of contracting COVID-19 in prison and whether his or her medical conditions render them particularly susceptible to severe illness or death should he or she contract the virus. *See United States v. Youngblood*, 858 Fed. Appx. 96, 98 (4th Cir. 2021) (citing *United States*

*v. High*, 997 F.3d 181, 185 (4th Cir. 2021)).

The defendant's claimed medical conditions include diabetes, sleep apnea, obesity, allergies, and high blood pressure. The defendant has been vaccinated against COVID-19 and she previously contracted the virus and recovered.

The government acknowledges that the defendant presents the risk factors of diabetes and obesity. However, the government argues that she no longer presents an extraordinary and compelling reason to warrant compassionate release because she has been vaccinated against COVID-19. The government further asserts that the BOP is treating the defendant for all of her medical conditions and those conditions are under control.

After reviewing the defendant's medical records, the court will assume that the defendant's current medical conditions, in light of the ongoing COVID-19 pandemic, constitute an extraordinary and compelling reason for consideration of her release.

But the court's inquiry does not end here. This court must now turn to an individualized assessment of the defendant's situation, with particular emphasis on the §3553(a) sentencing factors, the defendant's post-sentencing behavior, and other relevant information.

*Factors Under § 3553(a)*

1. *Nature and Circumstances of the Offense*. Beginning in at least February 2018 and continuing through March 2019, the defendant used her position as a law enforcement officer at the Orangeburg County Sheriff's Office (OCSO) to create and authorize fraudulent

documents for illegal immigrants attempting to obtain CIS U-Visas. The defendant did this in exchange for bribes. During an FBI undercover operation in December 2018 and February 2019, the defendant agreed to help protect trucks containing what she believed were drug proceeds of narcotics distribution by members of a Mexican cartel drug ring. The defendant also agreed to use her position as a law enforcement officer to help protect additional trucks in the future containing kilograms of cocaine and methamphetamine.

Based on the evidence gathered and interviews conducted during the course of the investigation, the defendant was held accountable for a total of 2,200 kilograms of converted drug weight and $12,400.39 in bribe payments.

In March 2019, the defendant was one of 9 defendants named in a 13-Count Indictment filed in the District of South Carolina. The defendant was named in the following Counts:

- Count 1:     Conspiracy to Violate Federal Law and to Defraud the United States, in violation of 18 U.S.C. § 371;

- Counts 2–4: Aiding and Abetting Visa Fraud, in violation of 18 U.S.C. §§ 1546 and 2; and

- Count 7:     Conspiracy to Possess with Intent to Distribute and to Distribute a Quantity of Controlled Substances (Lesser Included Offense), in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(C), and 846; and

- Count 9:     Carrying a firearm during and in relation to, and did possess a firearm in furtherance of a drug trafficking crime.

In January 2020, in accordance with the terms of a written plea agreement (ECF No. 362), the defendant pleaded guilty to Counts 1, 2, 3, 4, and 7 above.

A Presentence Report (PSR) (ECF No. 586) was prepared and calculated the defendant's total combined offense level at 31.[2] Her criminal history category was I. This yielded an advisory sentencing Guideline range of 108 to 135 months imprisonment. However, pursuant to the stipulations in Paragraph 10 of the Plea Agreement (ECF No. 362), the government and defendant stipulated that the defendant's total offense level was 25. This level 25 produced a guideline range of 57 to 71 months incarceration, a significant reduction for the otherwise-applicable Guideline range.

On March 10, 2021, this court denied the defendant motion to depart downward, and sentenced the defendant to 61 months imprisonment.

2. *History and Characteristics of the Defendant*. The defendant is 66 years old, widowed, and has three adult children. She has no prior criminal convictions and previously resided in Orangeburg, SC. According to the PSR prepared in early 2020, the defendant reported being in "overall good physical health, suffering only from complications associated with diverticulitis. However, she was not seeing a physician on a regular basis or taking any prescribed medications." (ECF No. 586 at ¶ 162). In addition, the defendant's motion for downward departure at sentencing states that she does not have any serious underlying health conditions. (ECF No. 567 at 3). She was approximately 62 years of age at her arrest.

---

[2] In the various groupings of the defendant's counts of conviction, the defendant was deemed a public official and a sheriff's deputy/law enforcement officer at the time she committed the offenses. Multiple bribes, abuse of position of public or private trust in a manner that significantly facilitated the commission or concealment of the offense, possession of a dangerous weapon (including a firearm), and conspiracy in the drug trafficking of large amounts cocaine and methamphetamine from a Mexican cartel drug ring were some of the specific offense characteristics contributing to her base offense levels.

8

The defendant has a bachelor's degree and served as a courthouse security deputy from 1998 until March 29, 2019, at which time she was fired from her job for her involvement in the instant offenses.

*Post-Sentencing Conduct*

She has served just more than one year of her 61-month sentence imposed by this court. Her expected release date is February 9, 2025 and she is currently housed at Lexington FMC.

The defendant has not had any disciplinary infractions since her incarceration.

The defendant has completed more than 20 fitness, exercise, and nutrition courses while incarcerated.

3. *Seriousness of the Crimes*. As evidenced by the historical facts set out in the PSR involving the defendant's instant conviction, this court regards the defendant's crime as extremely serious, fully supportive of a significant sentence.

4. *Whether the Sentence Promotes Respect for the Law and Just Punishment for the Offense*. The court finds a significant sentence is necessary to promote respect for the law and just punishment. Releasing the defendant would not promote respect for the law. Moreover, it would be inconsistent with the nature and circumstance of the defendant's offenses which involved significant abuses of power by her as a law enforcement officer.

5. *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct*. The court finds that a significant sentence is necessary to provide both general and specific

deterrents.

6. *Whether the Sentence Protects the Public from Future Crimes of the Defendant.* The court finds that a significant sentence is necessary to protect the public from future crimes of the defendant. The defendant's crimes were committed when she at least 61 years old, so her advanced age does not sway this court's consideration of potential future crimes.

7. *Need to Avoid Unwarranted Disparity.* Viewing the defendant's sentence as compared with the culpability of the her an her co-defendants, the stipulated and imposed sentence was significantly lower than the advisory range called for by the sentencing guidelines.

## CONCLUSION

On this record, the court concludes that the § 3553(a) factors compel the conclusion that the defendant's immediate release is not appropriate in this case. The motion (ECF No. 612) is denied.

IT IS SO ORDERED.

November 1, 2022  
Columbia, South Carolina

Joseph F. Anderson, Jr.  
United States District Judge